IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| BRITTANY BLAKE, D.C.; MORGAN LOFTUS (f/k/a MORGAN MARSH); RAQUEL OSTERBAUER; PATRICIA ASMAN; TAMARA RYAN; CYNTHIA TARANTO; and KERI WILLIAMS,<br><br>Plaintiffs,<br><br>vs.<br><br>NCMIC INSURANCE COMPANY,<br><br>Defendant. | Case No. 3:17-cv-00193-JMK<br><br>**ORDER ON<br>MOTION TO AMEND** |

The matter comes before the Court on Plaintiffs', Brittany Blake, D.C., Morgan Loftus (f/k/a Morgan Marsh), Raquel Osterbauer, Patricia Asman, Tamara Ryan, Cynthia Taranto, and Keri Williams, Motion to Amend Pretrial Order to Allow Plaintiffs to Amend Complaint Based on New Evidence (the "Motion").[1] Defendant NCMIC Insurance Company ( "NCMIC") opposes the Motion.[2] The parties did not request oral argument on the Motion, but, during a hearing held on May 3, 2021, the Court heard argument on the current Motion and the manner in which the Court's resolution of this

---

[1] Docket 60.
[2] Docket 69.

Motion would implicate a separate Motion to Compel.³ The Motion has been fully briefed.⁴ For the reasons explained below, the Motion is DENIED.

## I. BACKGROUND

The matter arises from an insurance dispute between the Plaintiffs, who are the assignees of a medical malpractice insurance policy (the "Policy") provided and serviced by NCMIC. The Court assumes the parties are familiar with the facts of this action and hereby incorporates the applicable background facts from the Court's prior Order addressing NCMIC's Motion to Dismiss, in which the Court granted NCMIC's request to dismiss Plaintiff's bad faith claim under Alaska law.⁵ The Court additionally incorporates the background facts set forth in the Court's Order addressing Plaintiffs' first Motion to Amend Complaint.⁶ In that Order, the Court denied Plaintiffs' request to amend their complaint to re-assert a claim for the tort of bad faith and breach of the covenant of good faith and fair dealing against NCMIC.⁷

Since Plaintiffs' last request to amend their complaint, the parties have continued to engage in discovery. On March 12, 2021, NCMIC made additional disclosures to Plaintiffs, which form the basis for the current attempt at amendment.⁸

---

³ The hearing on May 3, 2021, was held in connection with Plaintiffs' Motion to Compel at Docket 54. *See* Docket 79.
⁴ Docket 69; Docket 74.
⁵ Docket 29. The Court dismissed Plaintiffs' bad faith claim (Count III) without prejudice and denied NCMIC's request to dismiss claims for breach of the duties to defend and indemnify under Alaska law. *Id.* at 11–14.
⁶ Docket 44 at 2–3.
⁷ *Id.* at 3, 13.
⁸ Docket 69 at 12–13. NCMIC disclosed 4,649 pages of documents and a 30-page privilege log that described 1,450 withheld and redacted documents. Docket 60 at 2.

Plaintiffs argue they have diligently sought discovery of the documents for "two years via emails, letters, and phone calls," but were unable to meet the deadline for amended pleadings due to NCMIC's failure to produce.[9] Included in the March 12, 2021, disclosures was a letter dated May 1, 2019 ("May 1 letter"), sent from Richard W. Boone Jr., coverage attorney for NCMIC in the underlying lawsuit[10] and presently representing NCMIC in the current lawsuit, to Dr. Myron Schweigert, the original policyholder.[11] Plaintiffs argue this letter constitutes new evidence of NCMIC's knowledge that Dr. Schweigert committed medical malpractice covered by the Policy and therefore had no reasonable basis to deny coverage in violation of Alaska state law.[12] Plaintiffs move to amend their complaint to add a count of bad faith.[13]

NCMIC opposes the Motion. It argues that this Court already has found a genuine dispute regarding coverage for the underlying lawsuit between Plaintiffs and Dr. Schweigert, and the May 1 letter presents no new evidence that NCMIC lacked a reasonable basis for denying coverage. Specifically, NCMIC argues Plaintiffs have failed to show that they have been diligent in pursuing discovery, but, regardless, the proposed amendment is futile and the Motion should be denied.[14]

---

[9] Docket 60 at 9–10.
[10] The parties refer to an "underlying lawsuit," in which the Plaintiffs in this lawsuit sued Dr. Myron Schweigert and the Chugach Chiropractic Clinic, Inc., in the Alaska Superior Court on December 31, 2015. *See* Docket 29 at 2.
[11] *See* Docket 60-1.
[12] Docket 60 at 2–3.
[13] *Id.* at 3.
[14] Docket 69 at 5, 9.

## II. LEGAL STANDARD

Rules 15 and 16 of the Federal Rules of Civil of Procedure govern the amendment of proceedings. Rule 15(a) governs motions to amend pleadings that are timely filed, and instructs that a party may amend its pleading with the consent of opposing counsel or with leave of court, which should be "freely give[n] . . . when justice so requires."[15] "But a district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile."[16]

The analysis may change slightly after a Rule 16 scheduling order is entered. A party seeking to amend a pleading after the date specified in a pretrial scheduling and planning order must first show "good cause" exists for amendment under Rule 16(b), in addition to the requirements under Rule 15(a)(2).[17] "Good cause" under Rule 16 is a "more stringent" standard than the liberal Rule 15(a)(2) inquiry.[18] Ultimately, "[t]he district court may modify the pretrial schedule 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'"[19] "If a party establishes good cause to amend the scheduling order pursuant to Fed. R. Civ. P. 16(b)(4), the party must also meet the standard to allow for amendment of the pleading as set forth in Fed. R. Civ. P. 15(a)."[20] "[T]he

---

[15] Fed. R. Civ. P. 15(a)(2).
[16] *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citing *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999)).
[17] See *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992).
[18] *AmerisourceBergen*, 465 F.3d at 952 (internal punctuation omitted).
[19] *Sallison v. United States*, No. 3:17-CV-0051-HRH, 2018 WL 1866106, at *2 (D. Alaska Apr. 18, 2018) (quoting *Johnson*, 975 F.2d at 609).
[20] *Rigsbee v. City & Cty. of Honolulu*, No. CV 17-00532 HG-RT, 2019 WL 984276, at *2 (D. Haw. Feb. 28, 2019).

existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion," however, "the focus of the inquiry is upon the moving party's reasons for seeking modification."[21]

### III. ANALYSIS

Because Plaintiffs' Motion was filed after the Court's deadline for motions to amend had passed, the Court must determine whether Plaintiffs have established good cause to amend the scheduling order under Rule 16 before turning to whether amendment is proper under Rule 15. Here, the Court concludes that Plaintiffs were not diligent in pursuing this amendment, and good cause, therefore, does not exist to modify the scheduling order. The Court also concludes, in the alternative, that Plaintiffs' proposed amendment is not proper under Rule 15 because it would be futile. The Court's reasoning is explained in more detail below.

**A.     Good Cause Under Rule 16**

In this case, the Court entered the Scheduling and Planning Order on February 20, 2019, which set the deadline for motions to amend pleadings for March 29, 2019.[22] Plaintiffs filed their Motion on March 19, 2021, almost two years after the deadline already had passed.[23] Because Plaintiffs' Motion is tardy, the Court first looks to whether it satisfies the good cause standard of Rule 16(b)(4).

---

[21] *Id.*
[22] Docket 36 at 3.
[23] *See* Docket 60.

A "party seeking to amend [a] pleading after [the] date specified in [a] scheduling order must first show 'good cause' for amendment under Rule 16(b)," which "primarily considers the diligence of the party seeking amendment."[24] Good cause may be found where the moving party shows it: "1) is unable to comply with the deadlines contained in the scheduling order due to issues not reasonably foreseeable at the time of the scheduling order; or 2) was diligent in seeking an amendment once the party reasonably knew that it could not comply with the scheduling order."[25] If "the party was not diligent, the inquiry should end."[26] The Court may secondarily consider the prejudice to the opposing party opposing modification.[27]

The Court does not dispute that Plaintiffs were expeditious in filing their Motion after discovering the May 1 letter, just seven days prior.[28] However, this is not the only relevant timeframe. The diligence inquiry may also "turn on consideration of the movant's diligence before the deadline for amendments, [or] between the deadline and the motion to amend . . . ."[29] Here, this Court previously found that good cause did not exist for Plaintiffs to add a nearly identical claim of bad faith to their complaint because they were not diligent during the time period before the deadline.[30] In their first attempt to amend their complaint, Plaintiffs asserted that their Motion to Amend was filed to add

---

[24] *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608 (9th Cir. 1992).
[25] *Lerma-Mayoral v. City of El Centro*, No. 15CV818 LAB (PCL), 2017 WL 1807905, at *1 (S.D. Cal. May 5, 2017).
[26] *Johnson*, 975 F.2d at 609.
[27] *Id.*
[28] Docket 74 at 4.
[29] *Aldan v. World Corp.*, 267 F.R.D. 346, 357 (D.N. Mar. I. 2010).
[30] Docket 44 at 9 ("Plaintiffs' argument that they were diligent in pursuing their amendment because their Motion came on the heels of NCMIC's written discovery responses falls short.").

information "after NCMIC answered discovery requests."[31]  However, the Court found that Plaintiffs did not adequately explain why they waited until after the deadline to amend pleadings had lapsed to request written discovery.[32]  The Court noted that, even though Plaintiffs had demonstrated their awareness of the facts and theories supporting the proposed amendments prior to the deadline identified in the Scheduling and Planning Order, they nonetheless did not timely seek to extend previously agreed-upon pretrial deadlines.[33]  The Court ultimately determined Plaintiffs were not diligent.[34]

Plaintiffs make essentially the same arguments here.  They argue that they were unable to meet the deadline for amendments due to NCMIC's failure to produce discovery.[35]  However, Plaintiffs' own actions—asserting a nearly identical claim in their original complaint, which the Court dismissed under Fed. R. Civ. P. 12(b)(6)—shows that Plaintiffs were aware of the facts and theories supporting their proposed amendment well before the agreed-upon deadline.[36]  Plaintiffs still do not explain why they failed to timely move to amend their complaint or seek to extend the deadline in which to do so, especially when they were aware of delays in document production.[37]

---

[31] Docket 44 at 9–10.
[32] *Id.* at 10.
[33] *Id.*
[34] *Id.* at 11.
[35] Docket 60 at 9–10.
[36] *Acri v. International Ass'n of Machinists and Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir. 1986) ("late amendments to assert new theories are not reviewed favorable when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action.").
[37] *Benchmark Young Adult School, Inc. v. Launchworks Life Servs., LLC*, No. 12-cv-02953-BAS(BGS), 2014 WL 3014720, *3 (S.D. Cal. July 3, 2014) (finding plaintiff was diligent where they "assist[ed] the Court in creating a workable Scheduling Order, including seeking to modify the Scheduling Order through a joint motion when the parties experienced delays in producing documents . . . .").

Prejudice to NCMIC, although not required under Rule 16(b), supports denying the Motion. Granting Plaintiffs' request to amend the complaint to add a claim of bad faith likely would require reopening discovery to address the new allegations, and almost certainly would delay the proceedings. Such delay of a case that has been pending for several years is prejudicial to the parties.[38]

Accordingly, Plaintiffs were not diligent in pursuing their amendment, and thus have not established good cause under Rule 16 to modify the Scheduling and Planning Order and allow for an amended complaint.

**B.    Amendment Under Rule 15**

Even if the Court could find good cause to modify the Scheduling and Planning Order under Rule 16, it still would find that Plaintiffs' Motion fails under Rule 15, because amendment would be futile. "Futility of amendment can, by itself, justify the denial of a motion for leave to amend."[39] "The test for futility is identical to the one used when considering the sufficiency of a pleading challenged under Rule 12(b)(6)," which requires that the complaint "contain sufficient factual matter to state a facially plausible claim to relief."[40]

---

[38] *Ruvalcaba v. Ocwen Loan Servicing, LLC*, No. 15-cv-00744-BAS (DHB), 2018 WL 295973, *3 (S.D. Cal. Jan. 4, 2018) ("granting [Defendant's] motion would require reopening discovery to enable [Cross-Defendant] to address the new allegations, inevitably resulting in further delay of a case that has been pending for over two years. Such delay is clearly prejudicial not only to [Cross-Defendant] but to all parties, including the Plaintiff, because the Scheduling Order applies to all of them.").

[39] *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). "[A] district court need not grant leave to amend where the amendment: (1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *Scannell v. Wash. State Bar Ass'n*, 671 F. App'x 529, 531 (9th Cir. 2016) (quoting *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006)).

[40] *Gwitchyaa Zhee Corp. Alexander*, No. 4:18-CV-0016-HRH, 2019 WL 93498, at *3 (D. Alaska Jan. 3, 2019) (citations omitted).

Plaintiffs allege that the May 1 letter provides new evidence supporting Plaintiffs' bad faith claim. The letter states that, in the event of a settlement, "NCMIC will be required to report the amount of that settlement to the National Practitioner Data Bank maintained by the US Department of Health and Human Services."[41] Plaintiffs argue this document "establishes that NCMIC, the insurance company that denied Dr. Schweigert insurance coverage (both defense and indemnity) in response to a 2016 medical malpractice case ("Underlying Litigation"), has always known that Dr. Schweigert committed medical malpractice claims covered by its policy," because "[i]nsurers only make such reports if an insured doctor is liable for medical malpractice or if there is a professional board matter that resulted in some negative finding."[42]

NCMIC disagrees. NCMIC argues that Plaintiffs fundamentally misunderstand both its coverage position and the federally-mandated NPDB reporting requirements.[43] NCMIC also argues that the May 1 letter presents no new, relevant evidence to determining whether its coverage determination was made "without a reasonable basis," as required by Alaska law, to state a claim for the tort of bad faith.[44]

This Court twice before has held that Plaintiffs failed to state a claim against NCMIC for bad faith.[45] "Under Alaska law, the tort of bad faith denial of a claim 'necessarily requires that the insurance company's refusal to honor a claim be made

---

[41] Docket 60 at 2.
[42] *Id.* at 2–3.
[43] Docket 69 at 17–18.
[44] *Id.*
[45] *See* Dockets 29, 44.

without a reasonable basis.'"[46] In the Court's prior decision dismissing Plaintiffs' claim for bad faith, it held, "the[] facts, as pled, do not plausibly indicate that Defendant[] 'lacked a reasonable basis for denying coverage[;] . . . the[] facts, as pled, demonstrate only that the parties differed substantially on their interpretation of the Policy terms, and are not sufficient to state a claim for the tort of bad faith."[47] In Plaintiffs' subsequent attempt to re-assert their bad faith claim, the Court found that no new facts were alleged showing NCMIC's determination was made without a reasonable basis.[48] It concluded that Plaintiffs' proposed amendments would be subject to dismissal under Fed. R. Civ. P. 12(b)(6) and, thus, were futile.[49]

The Court finds similarly here. Specifically, the Court is not persuaded that the new evidence contained in the May 1 letter provides any factual support for Plaintiffs' assertion that notification to an insured party of potential[50] federal reporting requirements in an advance of mediation amounts to an admission that coverage was denied without a reasonable basis, especially when the Court already has found that NCMIC articulated a reasonable basis for denial of coverage.[51] The May 1 letter appears simply to reiterate NCMIC's reporting requirements under the Health Care Quality Improvement Act ("HCQIA").[52] The HCQIA mandates that an insurance company "which makes a payment

---

[46] *Weilbacher v. Progressive Northwestern Ins. Co.*, No. 3:05-cv-00204 TMB, 2007 WL 4698984, *1 (D. Alaska May 23, 2007).
[47] Docket 29 at 14.
[48] Docket 44 at 12–13.
[49] *Id.* at 13.
[50] According to NCMIC, to date, it "has not paid any portion of the underlying settlement and, therefore, has not reported anything regarding this matter to the NPDB." Docket 69 at 8–9.
[51] Docket 29 at 14.
[52] *See* 42 U.S.C. § 11101, *et seq.*

under a policy of insurance . . . or otherwise in settlement (or partial settlement) of, or in satisfaction of a judgment in, a medical malpractice action or claim shall report . . . information respecting the payment and circumstances thereof."[53] However, "a payment in settlement of a medical malpractice action or claim shall not be construed as creating a presumption that medical malpractice has occurred."[54] Plaintiffs' complaint in the underlying litigation alleged that Dr. Schweigert committed professional medical malpractice; according to the statute, a "medical malpractice *action* or *claim*" appears to be all that is necessary to trigger reporting requirements in the event a payment is made in settlement of those claims.[55] The May 1 letter does not reveal anything about NCMIC's position regarding its coverage determination.

Further, whether medical malpractice occurred is irrelevant to NCMIC's decision to deny coverage. In fact, NCMIC claims it "has never disputed that the Underlying Action alleges claims characterized as being for 'professional negligence' (i.e. medical malpractice) or that Schweigert specifically agreed with Plaintiffs to settle those claims."[56] NCMIC's stated position is that "even if a chiropractors' sexual assault was found to be both within the scope of practice for a chiropractor and a breach of the standard of care (and hence malpractice), the exclusion in the NCMIC Policy for sexual misconduct would bar coverage."[57] Even if the Court could construe the May 1 letter as evidence of NCMIC's belief that medical malpractice was committed, it still only would demonstrate

---

[53] 42 U.S.C. § 11131(a).
[54] 42 U.S.C. § 11137(d).
[55] Docket 1-4 at 16; 42 U.S.C. § 11131(a) (emphasis added).
[56] Docket 69 at 20–21.
[57] *Id.* at 19.

a difference in interpretation of the Policy terms between the parties. In other words, the new facts, as pled, do not plausibly indicate that NCMIC lacked a reasonable basis for denying coverage. Accordingly, the Court finds that Plaintiffs have not articulated facts that are sufficient to state a claim for bad faith. The proposed amendment, thus, would be subject to dismissal under Fed. R. Civ. P. 12(b)(6), and is futile.

In sum, the Court concludes that the amendment is not proper on two independently sufficient grounds. First, Plaintiffs have not demonstrated good cause to modify the Scheduling and Planning Order under Rule 16(b)(4). The Court separately concludes that the amendment is not proper under Rule 15 because Plaintiffs' proposed amendment is futile.

### IV. CONCLUSION

For the foregoing reasons, the Motion at Docket 60 is **DENIED**.

IT IS SO ORDERED this 7th day of July, 2021, at Anchorage, Alaska.

                                                             */s/ Joshua M. Kindred*
                                                                JOSHUA M. KINDRED
                                                             United States District Judge