IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

BRITTANY BLAKE, D.C.; MORGAN
LOFTUS (f/k/a MORGAN MARSH);
RAQUEL OSTERBAUER; PATRICIA
ASMAN; TAMARA RYAN; CYNTHIA
TARANTO; and KERI WILLIAMS,

             Plaintiffs,

vs.

NCMIC INSURANCE COMPANY[1]

             Defendant.

Case No. 3:17-cv-00193-JMK

**ORDER RE:  CROSS-MOTIONS
FOR SUMMARY JUDGMENT
AND MOTIONS TO STRIKE**

        Pending before the Court are (1) Defendant NCMIC Insurance Company's

("NCMIC") Motion for Summary Judgment at Docket 118 and (2) Plaintiffs' Motion for

Summary Judgment at Docket 121 (together, the "Cross-Motions").  The Cross-Motions

are fully briefed.[2]  The Court heard oral argument on the Cross-Motions on December 9,

2021; the Court then took the matter under advisement.[3]  Also pending in connection with

the Cross-Motions are (1) Plaintiffs' Motion to Strike Certain Evidence at Docket 124 and

---

    [1]  At Docket 28, the Court dismissed all claims against NCMIC Insurance Services.  The
case caption is therefore modified consistent with the above.
    [2]  Docket 123; Docket 125; Docket 126; Docket 127.
    [3]  Docket 136 (text entry).

(2) Defendant's Motion to Strike Plaintiffs' Reply in Support of its Motion to Strike Certain Evidence at Docket 132. Both Motions to Strike are fully briefed.[4]

# I. FACTUAL BACKGROUND

## A. The Underlying Action

Plaintiffs are seven women who formerly were patients of Dr. Myron Schweigert, a chiropractor practicing at Chugach Chiropractic Clinic, LLC (the "Clinic") in Eagle River, Alaska.[5] On December 31, 2015, Plaintiffs filed suit against Dr Schweigert and the Clinic in Alaska Superior Court (the "Underlying Action"), bringing claims for (1) professional malpractice relating to Dr. Schweigert's treatment of each of the Plaintiffs and (2) breach of the covenant of good faith and fair dealing, sexual harassment, and wrongful discharge relating to Dr. Brittany Blake's employment.[6] The Complaint in the Underlying Action contains allegations that Dr. Schweigert touched Plaintiffs' breasts, nipples, genital area, and buttocks during chiropractic treatments.[7] The Complaint also alleges that certain Plaintiffs experienced pain or bruising following Dr. Schweigert's administration of Electrotherapeutic Point Stimulation Therapy ("ETPS")[8] and that Dr. Schweigert administered cortisone injections into the shoulder of one Plaintiff on two occasions.[9] For each professional malpractice claim, the Complaint states that Dr. Schweigert "either lacked the degree of knowledge or skill or failed to exercise the

---

[4] Docket 127; Docket 130; Docket 134; Docket 135.
[5] Docket 119 at 7; Docket 121-1 at 2.
[6] Docket 121-3 at 8–20.
[7] *Id.* at 3–8.
[8] *Id.* at 6–7.
[9] *Id.* at 7.

*Blake et al v. NCMIC Insurance Company*  Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike  Page 2
Case 3:17-cv-00193-JMK  Document 140  Filed 05/26/23  Page 2 of 36

degree of care ordinarily exercised by chiropractors trained in the field of chiropractic care and was negligent and/or reckless in his chiropractic care."[10] The Complaint alleges each of the seven Plaintiffs suffered "severe humiliation, mental anguish, and emotional and physical distress" as a result of Dr. Schweigert's "negligent and/or reckless conduct."[11] The Complaint seeks "compensatory damages, in excess of $100,000, the exact amount to be proven at trial," plus "costs, attorney's fees and pre-judgment interest," and "such other and further relief as the Court deems just and proper."[12]

At all times relevant to this action, Dr. Schweigert and the Clinic were insured under Professional Liability Insurance Policy No. MP00034696 (the "Policy"), which was issued by NCMIC for the policy period of January 1, 2014, to January 1, 2015.[13] After being served with the Complaint in the Underlying Action, Dr. Schweigert and the Clinic tendered defense to NCMIC.[14] On March 22, 2016, counsel for NCMIC sent a letter to Dr. Schweigert, stating that "NCMIC will provide a defense in the Blake Lawsuit, pursuant to the Policy's Supplemental Legal Defense Endorsement and subject to a full reservation of rights."[15] NCMIC explained that the Supplemental Legal Defense Endorsement ("SLD Endorsement") provides a "maximum $25,000 limit of liability for defense costs incurred in any covered proceeding,"[16] which includes a civil action "where the insured is alleged to have committed sexual misconduct in the course of providing

---

[10] *Id.* at 8–17.
[11] *Id.*
[12] *Id.* at 19–20.
[13] Docket 120-2 at 1.
[14] Docket 121-1 at 3–4.
[15] Docket 121-7 at 1.
[16] *Id.*

professional services to a patient."[17] NCMIC also advised that "coverage is otherwise unavailable for this matter, which arises out of sexual impropriety specifically excluded from coverage under the Policy."[18] NCMIC stated that the allegations in the Complaint were outside the scope of coverage because (1) allegations of sexual impropriety are not "professional services" as defined by the Policy; (2) the alleged injuries were not "caused by an accident arising from an incident" under the Policy because they were the result of intentional sexual conduct; and (3) Plaintiffs' allegations of emotional distress, humiliation, and anguish do not constitute an "injury" under the Policy.[19] NCMIC also stated that "[t]he allegations asserted in the Blake Lawsuit are clearly within the purview of [Exclusion F], as each cause of action rests upon allegations that Dr. Schweigert engaged in sexual impropriety."[20] NCMIC informed Dr. Schweigert that, under the limited defense provided by the SLD Endorsement, NCMIC will appoint counsel to represent him, however, pursuant to Alaska Stat. § 21.96.100, he may select independent counsel to represent him and have all reasonable expenses incurred by such counsel paid by NCMIC up to the applicable $25,000 limit.[21]

Dr. Schweigert and the Clinic responded through counsel in a letter dated March 25, 2016.[22] The letter indicated that Dr. Schweigert disputed NCMIC's denial of coverage, stating that the causes of action in the Underlying Action arose from "certain

---

[17] *Id.* at 4.
[18] *Id.* at 1.
[19] *Id.* at 3–4.
[20] *Id.* at 4.
[21] *Id.* at 5.
[22] Docket 120-5 at 1.

*Blake et al v. NCMIC Insurance Company*
Order Re: Cross-Motions for Summary Judgment and Motions to Strike
Case No. 3:17-cv-00193-JMK
Page 4
Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 4 of 36

recognized chiropractic treatments" and Plaintiffs do not claim that Dr. Schweigert committed intentional sexual misconduct.[23]  The letter explained that "[a]n insurance company is required to defend the whole case even if some of the allegations are not within the policy coverage."[24]  Dr. Schweigert's counsel attached medical literature explaining the chiropractic procedures described in the Complaint and urged NCMIC to reconsider its coverage denial.[25]  Dr. Schweigert also invoked his right to independent counsel and retained Laura Farley to represent him in the Underlying Lawsuit.[26]  On April 5, 2016, Dr. Schweigert's counsel supplemented the March 25, 2016, letter with an Alaska Supreme Court case discussing the standard for an insurer's duty to defend.[27]  Dr. Schweigert's counsel indicated that "there are allegations of negligence contained in the Complaint . . . that are in no way sexual in nature," such as the allegations that Ms. Taranto, Ms. Williams and Ms. Asman experienced pain or bruising after the administration of ETPS.[28]  Dr. Schweigert's counsel claimed that these allegations triggered NCMIC's duty to defend the entire action regardless of whether there were other allegations in the Complaint that fell within a policy exception.[29]

On June 20, 2016, NCMIC responded to Dr. Schweigert's letters, reaffirming its prior denial of coverage.[30]  NCMIC explained that it reviewed the materials submitted

---

[23]  *Id.* at 1–2.
[24]  *Id.* at 3.
[25]  *Id.* at 1–38.
[26]  Docket 120-4 at 1.
[27]  Docket 120-6 at 1–2.
[28]  *Id.* at 2.
[29]  *Id.*
[30]  Docket 121-15 at 1.

*Blake et al v. NCMIC Insurance Company*                                    Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                         Page 5
Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 5 of 36

by Dr. Schweigert and determined, as it had before, that coverage for the Underlying Action was limited to defense costs up to $25,000 pursuant to the SLD Endorsement.[31] NCMIC asserted that coverage is governed by Plaintiffs' factual allegations, not the causes of action asserted in the Complaint, and Plaintiffs "plainly alleged touching and other acts of a sexual nature."[32] NCMIC also asserted that, even if some allegations in the Complaint were not sexual in nature, under the Policy's definitions, a "'claim' would encompass a written demand for money or services 'arising out of' any bodily injuries allegedly sustained by one patient during the entire course of the patient's chiropractic treatment."[33] NCMIC concluded that "it is immaterial whether some of the claims asserted in the Blake lawsuit also include allegations of conduct that is not sexual in nature, as all clearly arise out of sexually inappropriate conduct," and therefore "Exclusion F precludes coverage beyond the $25,000 available for defense costs under the Policy's SLD Endorsement."[34]

Dr. Schweigert's counsel wrote to NCMIC on June 30, 2016, proposing that the parties mediate their dispute.[35] Dr. Schweigert's attorneys wrote to NCMIC again on August 1, 2016, explaining that Dr. Schweigert and Plaintiffs had agreed to a mediator and that Dr. Schweigert's counsel "told plaintiffs' attorney that NCMIC has denied coverage and therefore they will have a difficult time collecting any judgment."[36] NCMIC declined to participate in mediation with the parties in the Underlying Action, and Dr. Schweigert's

---

[31] *Id.*
[32] *Id.* at 4.
[33] *Id.* at 4–5.
[34] *Id.* at 5.
[35] Docket 120-8 at 1–2.
[36] Docket 120-9 at 1.

*Blake et al v. NCMIC Insurance Company*                                     Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                          Page 6

Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 6 of 36

counsel advised NCMIC that the parties may proceed to mediation without its participation.[37]

In May 2017, the parties in the Underlying Action entered into a settlement agreement (the "Settlement") without the involvement of NCMIC.[38] Under the terms of the Settlement, Dr. Schweigert consented to entry of judgment to the medical malpractice claims in the Underlying Action for $250,000 in compensatory damages and $19,500 in attorney's fees for each Plaintiff.[39] The Settlement also contained an Assignment of Claims and a Covenant Not to Execute, which together provided that all claims Dr. Schweigert may possess against NCMIC were assigned to Plaintiffs, and Plaintiffs agreed not to "execute on any assets of Dr. Myron Schweigert other than the proceeds of the assigned claims against" NCMIC.[40] The Settlement also required Plaintiffs to dismiss all claims against the Clinic as well as Dr. Blake's employment-related claims.[41] Dr. Schweigert's counsel informed NCMIC of the Settlement on June 20, 2017.[42] Consistent with the terms of the Settlement, the Alaska Superior Court entered a Final Judgment in the Underlying Action on July 3, 2017.[43] NCMIC paid all defense costs incurred on behalf of Dr. Schweigert and the Clinic, which never exceed the $25,000 limit under the SLD Endorsement.[44] On August 3, 2017, Plaintiffs, as assignees under the Policy, filed the

---

[37] Docket 120-10 at 1.
[38] Docket 119 at 20.
[39] Docket 121-19 at 1.
[40] *Id.* at 13–14.
[41] *Id.* at 2.
[42] Docket 120-15 at 1.
[43] Docket 121-20.
[44] Docket 119 at 40; Docket 120-13.

*Blake et al v. NCMIC Insurance Company*                                    Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                          Page 7

Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 7 of 36

present action in Alaska Superior Court (the "Coverage Action").[45]  The Coverage Action was removed to this Court on September 6, 2017.[46]

## B.     The Policy

The Policy's limits of liability are $1 million Per Medical Incident, with a $3 million Policy Aggregate.[47]  The Coverage Agreement provision of the Policy provides in relevant part:

> **We** will pay on behalf of an **insured** all sums to which this insurance applies and for which an insured becomes legally obligated to pay as **damages** because of an **injury**.  The **injury** must be caused by an accident arising from an **incident** during the **policy period**.  The injury must also be caused by an **insured** under this policy.[48]

The Policy includes a Defense and Settlement Clause, which provides:

> **We** have the right and duty to defend any **claim** or suit brought seeking **damages** against the insured for an **injury** covered by this policy.  **We** have the right to appoint counsel and **we** may investigate any claim made or suit brought.  With your written consent, **we** may settle any **claim** or suit as **we** believe may be proper.   **We** shall not be obligated to pay any claim or judgment or to defend or continue to defend any suit after the limit of **our** liability is exhausted because of payment of judgments or settlements.  **Your** consent shall not be required to make a settlement or payment after a judgment has been entered against **you**.[49]

The Policy lists certain exclusions, stating that "this policy does not apply to **claims** arising out of, based upon, or attributable to any of the following . . ."[50]  Policy Exclusion F covers "[s]exual impropriety, sexual intimacy, sexual assault, sexual harassment or any other

---

[45] Docket 1-1.
[46] Docket 1.
[47] Docket 120-2 at 1.
[48] *Id.* at 7.  Bolded words are defined in the Definitions section of the Policy.
[49] *Id.*
[50] *Id.* at 9.

*Blake et al v. NCMIC Insurance Company*                                                       Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                             Page 8

Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 8 of 36

similarly defined act."[51]  Policy Exclusion M covers "[t]he prescribing of any substance

that state or federal law prohibits dispensing or that requires a prescription."[52]

As is relevant to this action, the following definitions apply to the terms used

in the Policy:

a) **Claim** means a written demand for money or services arising from an alleged injury to which this insurance applies.

b) **Injury** means bodily injury, sickness, disease or death sustained by any one **person**.

c) **Incident** means any negligent omission, act or error in the providing of **professional services** by an insured or any person for whose omissions, acts or errors an **insured** is legally responsible.  All such omissions, acts or errors causally related to the rendering of or failure to render **professional services** to one person shall be considered one **incident**. Causally related acts, errors and omissions includes acts, errors and omissions that have a common cause or form a causal chain of events.  An **incident** shall be deemed to have occurred at the time of the earliest act, error or omission comprising that **incident**.

d) **Professional Services** means services which are within the scope of practice of a chiropractor in the state or states in which the chiropractor is licensed.[53]

The Policy includes the SLD Endorsement, which is listed as an "[a]dditional

coverage[]."[54]  The SLD Endorsement states "[t]his endorsement provides supplemental

coverage for defense costs incurred by the insured in certain **covered proceedings**."[55]  The

SLD Endorsement provides that NCMIC's "liability for **defense costs** with respect to any

---

[51] *Id.*
[52] *Id.*
[53] *Id.* at 6–7.
[54] *Id.* at 1.
[55] *Id.* at 13.

*Blake et al v. NCMIC Insurance Company*                                      Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike            Page 9
Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 9 of 36

act or series of acts by an **insured** resulting in one or more **covered proceedings** is limited to twenty-five thousand dollars ($25,000) regardless of the number of acts alleged in any and all such **covered proceedings**."[56]   A "covered proceeding" includes a "Civil Proceeding for Alleged Sexual Misconduct," defined as

> a civil action in state or federal court where the insured is alleged to have committed acts of sexual misconduct in the course of providing **professional services** to a patient.  Sexual misconduct includes, but is not limited to, allegations of sexual impropriety, sexual intimacy, sexual assault, sexual battery, sexual harassment or sexual molestation, that is not otherwise subject to defense under the attached professional liability policy.[57]

## II.   PROCEDURAL HISTORY

Plaintiffs assert three causes of action against NCMIC in the Coverage Action:  (1) breach of contract (duty to defend); (2) breach of contract (duty to indemnify); and (3) bad faith.[58]  On September 27, 2018, this Court granted in part and denied in part NCMIC's Motion to Dismiss, dismissing Plaintiffs' bad faith claim without prejudice.[59] The Court denied Plaintiffs' motion to reconsider the dismissal of the bad faith claim[60] and twice denied Plaintiffs' requests for leave to amend the Complaint to reassert the bad faith claim.[61]  Accordingly, the Cross-Motions concern the only two remaining claims in the Coverage Action:  breach of the duty to defend and breach of the duty to indemnify.  The

---

[56] *Id.* at 14.
[57] *Id.* at 15.
[58] Docket 1-1 at 15–18.
[59] Docket 28.
[60] Docket 32.
[61] Docket 44; Docket 82.

*Blake et al v. NCMIC Insurance Company*                                             Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                    Page 10
Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 10 of 36

parties agree that the employment-related claims asserted by Dr. Brittany Blake in the Underlying Action are not relevant to the Coverage Action.[62]

## III.   LEGAL STANDARDS

### A.   Summary Judgment

Federal Rule of Civil Procedure 56(a) instructs a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The initial burden is on the moving party to show that there is an absence of genuine issues of material fact.[63]  If the moving party meets this initial burden, the non-moving party must set forth specific facts showing that there is a genuine issue for trial.[64]  All evidence presented by the non-moving party must be believed for the purposes of summary judgment and all justifiable inferences are to be drawn in its favor.[65]  In reviewing cross-motions for summary judgment, a court "review[s] each separately, giving the non-movant for each motion the benefit of all reasonable inferences."[66]  A court's function on summary judgment is not to weigh evidence or determine the truth of the matter, but rather, to determine if there are genuine issues for trial.[67]

---

[62] Docket 119 at 12 n.4.
[63] *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).
[64] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).
[65] *Id.* at 255.
[66] *Flores v. City of San Gabriel*, 824 F.3d 890, 897 (9th Cir. 2016) (citing *Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 786 (9th Cir. 2008)).
[67] *Anderson,* 477 U.S. at 249.

*Blake et al v. NCMIC Insurance Company*                                    Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                          Page 11

Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 11 of 36

## B.    Alaska Insurance Contract Interpretation

This matter invokes the Court's diversity jurisdiction and, as such, the Court applies state substantive law when analyzing Plaintiffs' claims.[68]    Under Alaska law, insurance contracts are interpreted according to the reasonable expectations of the insured, meaning that "the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations."[69]    To determine the reasonable expectations of the parties, Alaska courts look to the (1) language of disputed policy provisions; (2) the language of other provisions of the insurance policy; (3) relevant extrinsic evidence; and (4) case law interpreting similar provisions.[70]    Alaska courts "construe coverage broadly and exclusions narrowly in favor of insureds."[71]    However, Alaska courts "recognize a restriction on coverage if an insurer by plain language limits the coverage of its policy."[72]

## IV.    DISCUSSION

### A.    Motions to Strike

There are several evidentiary issues that the Court must resolve before proceeding to the merits of the Cross-Motions.    At Docket 124, Plaintiffs move to strike

---

[68] *E.g.*, *Freund v. Nycomed Amersham*, 347 F.3d 752, 761 (9th Cir. 2003); *see also* Docket 1 at 4–7.

[69] *Bering Strait Sch. Dist. v. RLI Ins. Co.*, 873 P.2d 1292, 1295 (Alaska 1994) (quoting *State v. Underwriters at Lloyds, London*, 755 P.2d 396, 400 (Alaska 1988)).

[70] *Id.* (quoting *Stordahl v. Gov't Emp. Ins. Co.*, 564 P.2d 63, 66 (Alaska 1977).

[71] *Devine v. Great Divide Ins. Co.*, 350 P.3d 782, 786 (Alaska 2015) (quoting *Hahn v. Alaska Title Guar. Co.*, 557 P.2d 143, 144–45 (Alaska 1976)).

[72] *Whittier Props., Inc. v. Alaska Nat. Ins. Co.*, 185 P.3d 84, 88 (Alaska 2008).

*Blake et al v. NCMIC Insurance Company*                                         Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                         Page 12

Case 3:17-cv-00193-JMK    Document 140    Filed 05/26/23    Page 12 of 36

(1) evidence that NCMIC did not consider or have in its possession when it denied coverage in 2016 and (2) the expert testimony of NCMIC's psychologist expert Janine Shelby. At Docket 132, NCMIC moves to strike certain arguments in Plaintiffs' Reply in Support of its Motion to Strike Certain Evidence or, alternatively, for leave to file a surreply.

Plaintiffs assert that certain evidence presented in NCMIC's Motion for Summary Judgment is irrelevant to the duty to defend and duty to indemnify and may not be considered by the Court, including expert testimony, testimony from fact witnesses deposed years after NCMIC denied coverage, and other factual evidence of which NCMIC was not aware at the time it denied coverage.[73] Plaintiffs reason that an insurer's duty to defend "must be determined on the basis of facts available to the insurer at the time the insured tenders the defense," and therefore, facts and expert testimony developed after NCMIC denied coverage are irrelevant.[74] While the duty to defend "attaches, if at all, on the basis of the complaint and known or reasonably ascertainable facts at the time of the complaint,"[75] the same is not true for the duty to indemnify, which "arises only when

---

[73] Docket 124 at 2–7.

[74] *Great Am. Assurance Co. v. Alaska State Fair, Inc.*, No. 3:11-cv-0185-TMB, 2014 WL 12527211, at *8 (D. Alaska Mar. 21, 2014) (quoting *Shade Foods, Inc. v. Innovative Products Sales & Mktg., Inc.*, 78 Cal. App. 4th 847, 881 (2000)).

[75] *Att'ys Liab. Prot. Soc'y, Inc., v. Ingaldson Fitzgerald, P.C.*, 370 P.3d 1101, 1112 (Alaska 2016), *abrogated on other grounds by Buntin v. Schlumberger Tech. Corp.*, 487 P.3d 595 (Alaska 2021); *see also Cont'l Ins. Co. v. U.S. Fid. & Guar. Co.*, 528 P.2d 430, 434 (Alaska 1974) ("The proper time to determine whether an insurer is liable upon its policy of insurance is after all the relevant facts have been ascertained; however, where an insurance contract creates a duty in the insurer to defend against lawsuits which could fall within the coverage, the scope of that duty is established by the pleadings in the action and by the facts which are known or reasonably ascertainable at the time defense is tendered to the insurer.").

*Blake et al v. NCMIC Insurance Company*                                          Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                Page 13

Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 13 of 36

coverage for a claim actually exists under the policy."[76] The Court may therefore consider evidence not known or available to NCMIC at the time it denied coverage when assessing whether Plaintiffs' claims are actually covered under the Policy.[77] When determining NCMIC's duty to defend, the Court may only consider the Complaint in the Underlying Action, facts reasonably known to NCMIC at the time it denied coverage, and the undisputed facts of the case.[78] Accordingly, Plaintiffs' Motion to Strike is GRANTED to the extent that the Court will not consider disputed evidence or evidence unavailable to NCMIC at the time it denied coverage when evaluating NCMIC's duty to defend, but is DENIED to the extent that the Court may consider such evidence when assessing whether coverage actually exists under the Policy.

Plaintiffs next argue that the Court should strike the testimony of NCMIC's expert Dr. Janine Shelby because (1) she is not licensed to practice as a psychologist in Alaska, and therefore she is not qualified to offer an expert opinion in Alaska, and (2) her opinions are unreliable and based on speculation because she did not examine the Plaintiffs, review their medical records relating to their treatment with psychologists, or review videos

---

[76] *Great American Assurance*, 2014 WL 12527211, at *9; *see Portland Gen. Elec. Co. v. Liberty Mut. Ins. Co.*, 112 F. Supp. 3d 1160, 1167 (D. Or. 2015) ("The analysis for the duty to indemnify is not limited to the complaint and the policy.").

[77] *See Stephan & Sons, Inc. v. Municipality of Anchorage,* 629 P.2d 71, 76 (Alaska 1981) ("[T]here is no duty to indemnify unless the liability in fact arose or resulted from the construction work"); *see also* 43 Am. Jur. 2d *Insurance* § 676 (West 2023) (The "parties may introduce evidence during coverage litigation to establish or refute the duty to indemnify. An insurer's duty to indemnify hinges not on the facts the claimant alleges and hopes to prove but instead on the facts, proven, stipulated, or otherwise established that actually create the insured's liability. A reviewing court is obligated to consider evidence extrinsic to the pleadings and the insurance policy in determining whether an insurer owes a duty to indemnify.").

[78] *Att'ys Liab. Prot. Soc'y*, 370 P.3d at 1112; *State Farm Fire & Cas. Co. v. Millman*, 413 F. Supp. 3d 940, 953 (D. Alaska 2019).

*Blake et al v. NCMIC Insurance Company*                                   Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike          Page 14

Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 14 of 36

of Plaintiffs' depositions.[79]  Plaintiffs' first argument is meritless.  There is no requirement under Federal Rule of Evidence 702 or under Alaska law that an expert be licensed in the state in which she will provide testimony, and Plaintiffs do not otherwise attack Dr. Shelby's education or experience.[80]  As for Plaintiffs' argument that Dr. Shelby's opinion is unreliable, the fact that Dr. Shelby did not review psychological medical records, video depositions, or personally examine the Plaintiffs does not compel a finding that her opinions are unreliable.  Plaintiffs cite to no caselaw that requires a review of medical records or an in-person examination for psychological expert testimony to be reliable.[81]  Dr. Shelby applied her experience and training to a review of Plaintiffs' depositions and formed an opinion as to Plaintiffs' responses.[82]  Plaintiffs also take issue with the narrowness of Dr. Shelby's opinion, specifically, that she will testify that Plaintiffs' symptoms are consistent with common reactions to sexual forms of violence, not that

---

[79]  Docket 124 at 7–11.

[80]  *McRunnel v. Batco Mfg.*, 917 F. Supp. 2d 946, 952 (D. Minn. 2013) (collecting cases); *Zaukar v. United States*, No. 3:20-cv-0163-HRH, 2022 WL 198714, at *5 (D. Alaska Jan. 21, 2022); *Martha S. v. State, Dep't of Health & Soc. Servs., Off. of Children's Servs.,* 268 P.3d 1066, 1077 (Alaska 2012) (analyzing issue of whether psychologist who is not licensed to practice psychology in Alaska may provide expert testimony in Alaska and concluding "Alaska Evidence Rule 702, governing the admissibility of expert testimony, has no licensing requirement; it only states that an expert witness can be qualified based on "knowledge, skill, experience, training, or education.").

[81]  *See Empire Fire & Marine Ins. Co. v. Patton*, No. CV-17-02159-PHX-JJT, 2019 WL 11544461, at *4–6 (D. Ariz. Aug. 26, 2019) (Noting that reviewing depositions and other documents was reliable method for a psychologist expert when psychologist was not diagnosing plaintiff with a mental illness); *Kanellakopoulos v. Unimerica Life Ins. Co.*, No. 15-CV-04674-BLF, 2018 WL 984826, at *2 (N.D. Cal. Feb. 20, 2018) ("The Court is unpersuaded by Plaintiff's contention that Dr. Perrillo's methodology—a review of Plaintiff's records—was unreliable because Dr. Perrillo did not examine Plaintiff in person.").

[82]  *See Empire Fire & Marine*, 2019 WL 11544461, at *6 ("[P]sychological testimony is more properly judged by the experience, knowledge, and training of the expert.").

*Blake et al v. NCMIC Insurance Company*                                    Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                    Page 15

Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 15 of 36

Plaintiffs actually experienced sexual violence; however, this is not a basis for excluding expert opinion testimony. Dr. Shelby's opinion is appropriately couched in equivocal terms given the inherent indeterminacy of psychological analysis. Finally, Plaintiffs assert that Dr. Shelby's opinion improperly encroaches upon the jury's function of making credibility determinations.[83] The Court disagrees. Dr. Shelby's opinion does not impermissibly comment on Plaintiffs' credibility—it describes the psychological symptoms that the Plaintiffs' discovery responses may reveal, which is outside the typical scope of understanding of a layperson and is therefore helpful to the trier of fact.[84] Plaintiffs' criticisms of Dr. Shelby's opinions are best suited for cross-examination rather than exclusion. Plaintiffs' Motion to Strike is DENIED as to the testimony of Dr. Shelby.

Turning to NCMIC's Motion to Strike, NCMIC asserts that Plaintiffs improperly raised new arguments in their Reply in support of their Motion to Strike and those new arguments should be struck or NCMIC should be allowed a Surreply in response to them.[85] The "district court need not consider arguments raised for the first time in a reply brief."[86] This rule "exists to guard against unfairness and surprise."[87] However, arguments and evidence presented in reply are not "new" if they are in direct response to arguments and proof adduced in opposition to a motion.[88] After reviewing Plaintiffs'

---

[83] Docket 130 at 10.
[84] *See United States v. Lukashov,* 694 F.3d 1107, 1117 (9th Cir. 2012).
[85] Docket 132.
[86] *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007).
[87] *Sunburst Mins., LLC v. Emerald Copper Corp.*, 300 F. Supp. 3d 1056, 1060 (D. Ariz. 2018).
[88] *Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1205 n.31 (C.D. Cal. 2007); D. Alaska Loc. Civ. R. 7.1(c) ("Reply memoranda are optional and restricted to rebuttal of factual and legal arguments raised in opposition").

*Blake et al v. NCMIC Insurance Company*                                   Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                    Page 16

Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 16 of 36

Reply, the Court, in its discretion, concludes that the brief does not raise new arguments, it merely "reiterates and elaborates" on the arguments in its opening brief and responds to the factual and legal arguments raised in opposition, rendering the risk of an unfair surprise to NCMIC negligible.[89]   In fact, NCMIC's proposed Surreply strays farther from the parties' previous arguments than Plaintiffs' Reply.   NCMIC's Motion to Strike at Docket 132 is therefore DENIED.   The Court will not strike Plaintiffs' Reply brief at Docket 130 and will not treat Docket 132 as NCMIC's Surreply.

## B.   Cross-Motions for Summary Judgment

This case presents four distinct questions for the Court on summary judgment:  First, did NCMIC breach its duty to defend by taking the position that it owed Dr. Schweigert a limited defense under the SLD Endorsement?   Second, if NCMIC breached its duty to defend, does this breach alone render NCMIC liable for the Settlement?  Third, are the claims in the Underlying Action Settlement covered by the Policy?  Fourth, is the Settlement reasonable?  The Court addresses each question below.

### 1.   Did NCMIC breach its duty to defend?

An insurer's duty to defend and its duty to indemnify are "separate and distinct contractual elements."[90]   Under Alaska law, the duty to defend is broader than the duty to indemnify because "an insurer may have an obligation to defend although it has no

---

[89]  *Textile Secrets Int'l, Inc. v. Ya-Ya Brand Inc.*, 524 F. Supp. 2d 1184, 1203 (C.D. Cal. 2007).

[90]  *Sauer v. Home Indem. Co.*, 841 P.2d 176, 180 (Alaska 1992).

*Blake et al v. NCMIC Insurance Company*                                   Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                Page 17

Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 17 of 36

ultimate liability under the policy."[91]  The causes of action asserted in a complaint are not determinative of the scope of the duty to defend; "[t]he duty to defend arises out of the facts of the case, not the label placed on the facts by the attorneys."[92]  "[T]he scope of an insurer's duty to defend is determined by construing the terms of the insurance contract in reference to the allegations in the complaint."[93]  Whenever a "complaint *on its face* alleges facts which, standing alone, give rise to a possible finding of liability covered by the policy, the insured has the contractual right to a proper defense at the expense of the insurer."[94]  Relatedly, "[i]f the damages alleged in the complaint are 'at least potentially outside the scope' of a policy exclusion, an insurer has a duty to defend."[95]

Here, Plaintiffs alleged facts in the Underlying Action that were potentially within the Policy's coverage, triggering NCMIC's duty to defend.  Specifically, the Complaint contains factual allegations that Ms. Taranto, Ms. Williams, and Ms. Asman experienced pain or bruising during Dr. Schweigert's administration of ETPS (together, the "ETPS Allegations").[96]  The ETPS Allegations allege a covered injury and do not clearly fit within a policy exclusion.  NCMIC asserts that nearly every other factual allegation in the Complaint arises out of sexual impropriety and therefore falls within

---

[91]  *Id.* (quoting *Afcan v. Mutual Fire, Marine and Inland Ins. Co.*, 595 P.2d 638, 645 (Alaska 1979)).

[92]  *D.W.J. v. Wausau Bus. Ins. Co.*, 192 F. Supp. 3d 1014, 1022 n.60 (D. Alaska 2016).

[93]  *Great Am. Assurance Co. v. Alaska State Fair, Inc.*, No. 3:11-cv-0185-TMB, 2014 WL 12527211, at *5 (D. Alaska Mar. 21, 2014) (quoting *O'Neill Investigations, Inc. v. Illinois Emp. Ins. of Wausau,* 636 P.2d 1170, 1173 (Alaska 1981)).

[94]  *Sauer*, 841 P.2d at 180 (emphasis in the original) (quoting *Afcan*, 595 P.2d at 645).

[95]  *Great American*, 2014 WL 12527211, at *5 (quoting *id.* at 181–82).

[96]  Docket 121-3 ¶¶ 26, 29, 31.

*Blake et al v. NCMIC Insurance Company*                                      Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                    Page 18

Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 18 of 36

Policy Exclusion F.[97]  The Court agrees that the only reasonable interpretation of the majority of the allegations in the Complaint is that they allege sexual impropriety, regardless of Plaintiffs' "professional malpractice" label.[98]  Each Plaintiff asserts that Dr. Schweigert touched or rubbed their nipples or breasts.[99]  The Complaint also alleges that Dr. Schweigert "touched Ms. Osterbauer in the genital area while adjusting her pelvic area"; "pushed his slightly erect penis up against Ms. Taranto's buttocks" while fitting her with a back brace; and, during a chiropractic adjustment, "Dr. Schweigert's finger went in Dr. Blake's buttocks and touched her anus through her pants."[100]  All of these allegations are unconnected to any bodily injury besides the nature of the touching itself.  Plaintiffs' repeated argument that the Complaint in the Underlying Action contains *no* allegations of sexual impropriety therefore strains credulity.[101]  However, where, as here, the Complaint alleges facts that fall both within and outside the Policy coverage, the insurer has a duty to defend the entire action.[102]  In other words, "[t]he presence of other allegations in the

---

[97] Docket 119 at 10, 13 n.7; NCMIC acknowledges that there is one other "non-sexual" allegation—Ms. Marsh alleges that Dr. Schweigert administered cortisone injections into her shoulder on two different occasions—but this allegation does not describe an injury covered by the Policy.  Docket 127 at 26; Docket 121-3 ¶ 34.

[98] *See NCMIC Ins. Co. v. Smith*, 389 F. Supp. 3d 535, 543 (S.D. Ohio 2019) (concluding that allegations that the defendant "exposed patients' breasts, touched [their breasts], and placed his genitals in contact with patients while performing chiropractic procedures . . . 'unquestionably allege a pattern of sexual assault and impropriety,'" triggering a policy exclusion).

[99] Docket 121-3 ¶¶ 15, 23, 24, 29, 30, 32, 33, 36, 38.

[100] *Id.* ¶¶ 17, 25, 37.

[101] Docket 121 at 27, 31, 34; *see also NCMIC Ins. Co. v. Smith*, 389 F. Supp. 3d 535, 543 (S.D. Ohio 2019) (concluding that allegations that the defendant exposed and touched patients' breasts and placed his genitals on patients while performing chiropractic procedures "unquestionably allege a pattern of sexual assault and impropriety," triggering a policy exclusion).

[102] *See Dutchuk v. Yesner*, No. 3:19-cv-0136-HRH, 2020 WL 4606888, at *5 (D. Alaska Aug. 11, 2020) (collecting cases).

*Blake et al v. NCMIC Insurance Company*                                              Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                          Page 19
Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 19 of 36

complaint which are not within policy coverage does not relieve [NCMIC] of its duty to defend."[103] Accordingly, the presence of the ETPS Allegations in the Complaint triggered NCMIC's duty to defend the entire Underlying Action.

NCMIC argues that even if the ETPS Allegations are not sexual in nature, they still fall within the purview of Policy Exclusion F because (1) each Plaintiff's allegations must be viewed as a whole under the relevant Policy definitions and (2) courts interpret the phrase "arising out of" broadly.[104] The Policy affords coverage for "all sums to which this insurance applies and for which an **insured** becomes legally obligated to pay as **damages** because of an **injury** . . . caused by an accident arising from an **incident** during the **policy period**."[105] The Policy defines "injury" as "bodily injury, sickness, disease or death sustained by any one person."[106] The Policy defines "incident" as "any negligent omission, act or error in the providing of **professional services** by an **insured**" and clarifies that "[a]ll such omissions, acts or errors causally related to the rendering of or failure to render **professional services** to one person shall be considered one **incident**."[107] Policy Exclusion F excludes from coverage "**claims** arising out of, based upon, or attributable to . . . [s]exual impropriety, sexual intimacy, sexual assault, sexual harassment or any other similarly defined act."[108] The Policy defines "claim" as "a written demand for money or services arising from an alleged **injury** to which this insurance applies."[109] Under these

---

[103] *Sauer v. Home Indem. Co.*, 841 P.2d 176, 181 (Alaska 1992).
[104] Docket 119 at 34–39.
[105] Docket 120-2 at 7.
[106] *Id.* at 6.
[107] *Id.*
[108] *Id.* at 9.
[109] *Id.* at 6.

*Blake et al v. NCMIC Insurance Company*                                    Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                      Page 20

Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 20 of 36

definitions, NCMIC asserts that "the Policy's definition of 'claim' encompasses a written demand for money or services arising from any bodily injury . . . sustained by any one person during the entire course of that person's chiropractic treatment."[110] Therefore, each Plaintiff asserts one "claim" in the Underlying Action.[111] NCMIC further argues that courts interpret the phrase "arises out of" broadly.[112] Indeed, when considering the phrase "arises out of," Alaska courts "do not require proximate cause in its strict legal sense";[113] however, there must be "*some* causal connection . . . ."[114] Putting this all together, NCMIC concluded in its coverage letters that

> it is immaterial whether some of the claims asserted in the Blake Lawsuit also include allegations of conduct that is not sexual in nature, as all clearly arise out of sexually inappropriate conduct. In fact, though this is not required, all of these claims are based primarily, and in most cases exclusively, on the alleged sexual misconduct."[115]

Plaintiffs assert that NCMIC's argument that the Court must look to each of the Plaintiffs' allegations as a whole is incorrect because it relies on the Policy's Coverage Agreement provision and certain Policy Exclusions, while NCMIC's obligation to defend is determined by the Policy's Defense and Settlement Clause, which does not include the word "incident."[116] This is a distinction without a difference. The Defense and Settlement Clause provides that NCMIC's duty to defend extends to "any claim . . . brought seeking

---

[110] Docket 119 at 34.
[111] *Id.*
[112] *Id.*
[113] *D.D. v. Ins. Co. of N. Am.*, 905 P.2d 1365, 1368 (Alaska 1995) (quoting *Criterion Ins. Co. v. Velthouse*, 751 P.2d 1, 3 (Alaska 1986)).
[114] *Shaw v. State Farm Mut. Auto. Ins. Cos.*, 19 P.3d 588, 591 (Alaska 2001) (emphasis in the original) (quoting *Velthouse*, 751 P.2d at 3).
[115] Docket 120-7 at 5.
[116] Docket 123 at 25–28.

*Blake et al v. NCMIC Insurance Company*                                    Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                    Page 21

Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 21 of 36

**damages** against the **insured** for an **injury** *covered by this policy*."[117]  Therefore, it was correct for NCMIC to conclude that, under the Policy, "to determine whether there is a duty to defend, you must first determine what is covered under the policy" and therefore the duty to defend should be analyzed in conjunction with the Coverage Agreement and Policy Exclusions.[118]  However, NCMIC's misstep came from concluding that the ETPS Allegations were not at least potentially outside the scope of Policy Exclusion F.  NCMIC's argument that Plaintiffs' claims must be viewed as whole does not negate the legal principle that its duty to defend the entire action is triggered if the complaint "alleges facts which, *standing alone*, give rise to a possible finding of liability covered by the policy."[119]  The ETPS Allegations, standing alone, triggered NCMIC's duty to defend the Underlying Action.  Further, although NCMIC is correct that courts interpret the phrase "arising out of" broadly, NCMIC concluded, without support, that Ms. Asman, Ms. Williams, and Ms. Taranto's non-sexual ETPS Allegations arose out of Dr. Schweigert's alleged sexual

---

[117] Docket 120-2 at 7 (emphasis added).

[118] Docket 125 at 17.  Plaintiffs' arguments that *Barron v. NCMIC Ins. Co.*, No. 17-cv-11969-ADB, 2018 WL 2089357 (D. Mass. May 4, 2018) and *NCMIC Ins. Co. v. Smith*, 389 F. Supp. 3d 535 (S.D. Ohio 2019) stand for the proposition that NCMIC's duty to defend begins and ends with an analysis of the Defense and Settlement Clause are misleading.  Docket 121 at 20–23.  In *Barron*, the Court criticized the parties for starting with the Policy's exclusions and the SLD Endorsement, rather than first assessing whether "a claim covered by the terms of the Policy can be roughly sketched from GEICO's allegations."  The Court concluded "the Policy does not broadly cover all claims or suits arising out of the Barron Chiropractors' rendering of professional services but is limited to a claim or suit for an 'injury,' which is narrowly defined under the Policy." 2018 WL 2089357, at *6.  In *Smith*, the Court started its duty to defend analysis by analyzing the term "incident" in the Coverage Agreement and then analyzing the Policy's exclusions.  The Court stated that "Plaintiff correctly notes that the Defense Settlement Clause limits the duty to defend to an 'injury covered by this policy.'"  389 F. Supp. 3d at 542, 544.

[119] *Sauer v. Home Indem. Co.*, 841 P.2d 176, 180 (Alaska 1992) (emphasis added) (quoting *Afcan*, 595 P.2d at 645).

*Blake et al v. NCMIC Insurance Company*                                    Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                 Page 22

Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 22 of 36

misconduct.[120]  NCMIC argues that its chiropractic expert, Dr. Pfeifer, concluded that the ETPS injuries alleged in the Complaint arose out of sexual misconduct, but it does not assert that it had the benefit of Dr. Pfeifer's expertise at the time Dr. Schweigert tendered defense.[121]  As stated above, the scope of the duty to defend must be determined on the basis of facts available to the insurer at the time the insured tenders the defense.[122]  From the face of the Complaint, there was no indication that the ETPS Allegations were causally related to Dr. Schweigert's alleged sexual misconduct.  NCMIC does not cite to any information that it had in 2016 that led it to conclude that the allegations regarding ETPS had any connection with the allegations relating to sexual impropriety.  Merely concluding that Plaintiffs' claims "all clearly arise out of sexually inappropriate conduct" amounted to "choosing to accept a version of the facts or an interpretation of the policy which [NCMIC] finds most favorable," which cannot defeat the duty to defend.[123]  Here, it was unclear whether there was any connection between the ETPS Allegations and allegations of a sexual nature.  Therefore, the ETPS Allegations triggered NCMIC's duty to defend because they were potentially outside the scope of Policy Exclusion F.

　　　　　Finally, NCMIC argues that, because it fully defended Dr. Schweigert under the terms of the SLD Endorsement, it did not breach its duty to defend.[124]  The SLD Endorsement provides a maximum $25,000 limit of liability for defense costs from civil

---

[120] Docket 119 at 12 n.5, 13 n.6.
[121] Docket 127 at 14–16.
[122] *Att'ys Liab. Prot. Soc'y, Inc., v. Ingaldson Fitzgerald, P.C.*, 370 P.3d 1101, 1112 (Alaska 2016), *abrogated on other grounds by Buntin v. Schlumberger Tech. Corp.*, 487 P.3d 595 (Alaska 2021).
[123] Docket 120-7 at 5; *Sauer v. Home Indem. Co.*, 841 P.2d 176, 182 (Alaska 1992).
[124] Docket 119 at 40.

*Blake et al v. NCMIC Insurance Company*                                    Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                    Page 23

Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 23 of 36

actions in which the insured in "alleged to have committed acts of sexual misconduct in the scope of providing professional services to a patient."[125]  NCMIC's argument that it provided a sufficient defense under the SLD Endorsement presupposes that its coverage determination was correct, and posits that an insurer cannot breach the duty to defend where it paid all defense costs incurred on behalf of its insured.[126]  There is a dearth of caselaw addressing whether wrongfully providing a limited defense, as opposed to wrongfully refusing to provide any defense, constitutes a breach of the duty to defend.[127]  However, given that the scope of the duty to defend "must be assessed at the outset of the case" and is not affected by events later in the litigation, the Court concludes that agreeing to provide a limited defense where a full defense is due breaches an insured's duty to defend.  Fulfilling a limited defense "may mitigate damages but will not cure the initial breach of duty" to defend the entire action.[128]  Holding otherwise would offer insurers an incentive to artificially narrow their duty to defend at the outset of a case to cap the amount of defense costs for which they will be liable.  The Court finds that NCMIC breached its

---

[125] Docket 120-2 at 15.

[126] Docket 119 at 40–42.

[127] *See Great Am. Assurance Co. v. Alaska State Fair, Inc.,* No. 3:11-CV-0185-TMB, 2014 WL 12527211, at *7 (D. Alaska Mar. 21, 2014) ("Great American's failure to provide any defense to the Fair, whose complaint stated a claim that potentially fell within the policy's coverage, constituted a material breach of the insurance contract."); *Afcan v. Mut. Fire, Marine & Inland Ins. Co.,* 595 P.2d 638, 646 (Alaska 1979) ("Here the insurer was fully apprised of the filing and contents of the amended complaint and yet steadfastly refused to defend.  This constituted a breach of Mutual Fire's contractual duty to defend Barclay").

[128] *Id.* at *8 (quoting *Shade Foods, Inc. v. Innovative Products Sales & Mktg., Inc.,* 78 Cal. App. 4th 847, 881 (2000)); *see also Dutchuk v. Yesner,* No. 3:19-cv-0136-HRH, 2020 WL 4606888, at *5 (D. Alaska Aug. 11, 2020) (collecting cases).

*Blake et al v. NMIC Insurance Company*                                         Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                    Page 24
Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 24 of 36

duty to defend when it concluded that its duty was limited to the $25,000 in defense costs under the SLD Endorsement.

## 2. Is NCMIC liable for the Settlement as a result of its breach of the duty to defend?

Having determined that NCMIC breached its duty to defend, the Court now addresses the available remedies for that breach. "When an insurer breaches the insurance contract by wrongfully refusing to defend its insured, the insurer will always be liable for the reasonable costs and attorney's fees subsequently incurred by the insured" in the defense or settlement of the claim.[129] It is undisputed that NCMIC paid all of Dr. Schweigert's defense costs incurred in defending and settling the Underlying Action, which never reached the $25,000 limit under the SLD Endorsement.[130] Therefore, the standard remedy for breaching the duty to defend is inapplicable in this case. Plaintiffs contend that, "[b]ecause NCMIC breached its duty to defend, it is estopped from asserting coverage defenses" and therefore is liable for the Settlement "even though the facts may ultimately demonstrate that no indemnity is due."[131] NCMIC counters that the coverage by estoppel is inappropriate here because the Alaska Supreme Court has held that where "settlement is reached in a suit which alleged several grounds for relief, some within policy coverage and some not, . . . the insurance company should be permitted to contest coverage."[132]

---

[129] *Afcan*, 595 P.2d at 646.
[130] Docket 119 at 10; Docket 120-13.
[131] Docket 124 at 41 (quoting *Sauer v. Home Indem. Co.*, 841 P.2d 176, 183 (Alaska 1992)).
[132] *Afcan*, 595 P.2d at 647.

*Blake et al v. NCMIC Insurance Company*                                      Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                          Page 25

Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 25 of 36

While coverage by estoppel is "the usual remedy for breaches of the insurer's duty to defend," it is an "extreme remedy."[133]  Under Alaska law, the elements of estoppel are:

> (1) the party to be estopped must know the facts; (2) [they] must intend that [their] conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) [they] must rely on the former's conduct to [their] injury.[134]

In the insurance context, the last element—prejudice—is often determinative.[135] "Generally, prejudice to an insured occurs when an insurer obtains an unfair advantage by misleading, deceiving, or withholding information from the insured."[136]  Where the insurer engages in misconduct and the insured is harmed by that misconduct, coverage by estoppel works to prevent the insurer from denying coverage based on a defense related to the misconduct.[137]  Examples of when coverage by estoppel applies include where "the insurer does not communicate its decision to withdraw or explain the basis for its decision but simply denies coverage"[138] and where the insurer gained full access to the insured during litigation, covertly investigating a later-asserted coverage defense, and never informed the

---

[133] *Progressive Cas. Ins. Co. v. Skin*, 211 P.3d 1093, 1103 n.38 (Alaska 2009).

[134] *Att'ys Liab. Prot. Soc'y, Inc. v. Ingaldson Fitzgerald, P.C.*, 838 F.3d 976, 982 (9th Cir. 2016) (quoting *O'Neill Investigations, Inc. v. Ill. Emp'rs. Ins. of Wausau*, 636 P.2d 1170, 1178 (Alaska 1981)).

[135] *Id.*; *Ivey v. Am. Home Assur. Co.*, No. 3:03-CV-0202-TMB, 2006 WL 1452686, at *6 (D. Alaska May 19, 2006) (noting that "[p]rejudice is an essential element of any estoppel claim").

[136] *Attorneys Liability Protection Society*, 838 F.3d at 982 (citing *Progressive*, 211 P.3d at 1103 and *Lloyd's & Inst. of London Underwriting Cos. v. Fulton*, 2 P.3d 1199, 1207–08 (Alaska 2000)).

[137] *See Progressive*, 211 P.3d at 1103.

[138] *Sauer v. Home Indem. Co.*, 841 P.2d 176, 183 (Alaska 1992).

*Blake et al v. NCMIC Insurance Company*  Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike  Page 26

Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 26 of 36

insured of their right to independent counsel.[139]  The misconduct present in those cases is absent here.  There was no bait and switch or overreaching on NCMIC's part.  This is plainly not a case where NCMIC "abandon[ed] its insured in the face of a lawsuit over potentially covered claims and later, in the insured's action on the policy, [benefitted from the] factual or legal issues determined in the earlier litigation."[140]

NCMIC informed Dr. Schweigert from the outset that it intended to assert certain coverage defenses, reserved its rights to "deny or limit coverage on any of the previously stated or other bases," informed Dr. Schweigert of his right to independent counsel, and acted consistently with its view that coverage did not exist except under the SLD Endorsement.[141]  Dr. Schweigert's independent counsel was fully paid for by NCMIC.[142]  It would be inequitable to apply the "extreme" remedy of coverage by estoppel to a situation where, as here, the insurer interpreted its duty to defend too narrowly, but that interpretation was clearly and consistently communicated to the insured, and the insured's defense costs were fully covered.[143]  Plaintiffs argue that defending medical malpractice cases usually costs substantially more than $25,000 and limiting Dr. Schweigert's defense to that amount harmed him by encouraging him to settle rather than face out-of-pocket costs for his defense.[144]  This prejudice is purely hypothetical.

---

[139] *Lloyd's*, 2 P.3d at 1207.
[140] *Sauer*, 841 P.2d at 183.
[141] Docket 120-7 at 6; Docket 125 at 30.
[142] Docket 125 at 7.
[143] *Progressive*, 211 P.3d at 1103 n.38; *see also Ivey v. Am. Home Assur. Co.*, No. 3:03-CV-0202-TMB, 2006 WL 1452686, at *6 (D. Alaska May 19, 2006) ("The focus of estoppel is equity").
[144] Docket 123 at 40.

*Blake et al v. NCMIC Insurance Company*                                              Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                    Page 27

Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 27 of 36

Defense costs were a number of a myriad of factors that Dr. Schweigert's counsel considered in assessing whether to recommend settlement to Dr. Schweigert.[145] The Court finds that, although NCMIC breached its duty to defend here, coverage by estoppel is not an equitable remedy for that breach.

This case is similar to *Afcan v. Mutual Fire, Marine & Inland Insurance Co.*, where the insured breached the duty to defend but "clearly communicated its decision to withdraw from the defense of the case and explained to the insured the basis of its decision," and the underlying action then settled.[146] In that situation, the Alaska Supreme Court determined that the insured was liable for only the portions of the settlement that fall within the policy's coverage as a result of its breach of the duty to defend.[147] Following the court's reasoning in *Afcan*, this Court finds that NCMIC will only be liable for those portions of the Settlement covered by the Policy as a result of its breach of the duty to defend. This analysis directly overlaps with the analysis for the duty to indemnify—both require the Court to assess if any part of the Underlying Action was covered by the Policy.[148] The Court conducts this coverage analysis in the next section.

---

[145] Docket 120-14 at 111:10–16.

[146] *Sauer v. Home Indem. Co.*, 841 P.2d 176, 183 (Alaska 1992) (discussing *Afcan v. Mut. Fire, Marine & Inland Ins. Co.*, 595 P.2d 638, 647 (Alaska 1979)).

[147] *Afcan,* 595 P.2d at 647; *see also* Steven Plitt, Daniel Maldonado, Joshua D. Rogers, and Jordan R. Plitt, 14 *Couch on Insurance* § 205:74 (3d ed. 2022) ("If the insurer fails to defend an action against the insured where the action is based on claims some of which are within and some without policy coverage, and the insured unsuccessfully defends the action, then the insurer will be liable for the recovery against the insured, if such recovery is on a claim covered by the policy, although no liability for the recovery will rest upon the insurer if the recovery is on a noncovered claim.").

[148] *Great Am. Assurance Co. v. Alaska State Fair, Inc.*, No. 3:11-cv-0185-TMB, 2014 WL 12527211, at *8 (D. Alaska Mar. 21, 2014).

*Blake et al v. NMCIC Insurance Company*                                        Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                          Page 28

Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 28 of 36

### 3. Are the claims in the Underlying Action covered under the Policy?

As described above, "[i]f all of the settled claims were in fact covered claims under the policy, then [NCMIC] is obliged to indemnify [Plaintiffs] for the liability arising from those claims—here, the amount of the settlement (if that settlement was both reasonable and nonfraudulent)."[149] The Court finds that the Policy precludes coverage for the claims asserted by Dr. Blake, Ms. Osterbauer, Ms. Marsh, and Ms. Ryan. Coverage under the Policy extends to "bodily injury, sickness, disease or death sustained by any one person."[150] Although the Plaintiffs each assert that they suffered undefined "physical distress," none of the allegations concerning these four Plaintiffs describe anything that could be considered an "injury" under the Policy.[151] The Complaint's reference to "physical distress" is too brief and speculative to trigger coverage and Plaintiffs' other allegations of "severe humiliation, mental anguish, emotional distress and past and future wage loss" fall plainly outside the Policy's definition of "injury."[152] Further,

---

[149] *KICC-Alcan Gen., Joint Venture v. Crum & Forster Specialty Ins. Co., Inc.*, 242 F. Supp. 3d 869, 875 (D. Alaska 2017).

[150] Docket 120-2 at 6.

[151] Docket 121-3 at 3–8; *see also Barron v. NCMIC Ins. Co.*, No. 17-CV-11969-ADB, 2018 WL 2089357, at *6 (D. Mass. May 4, 2018) (construing similar policy and noting that an "injury" is the "crucial requirement for a claim to be covered under this Policy"); *NCMIC Ins. Co. v. Johnson*, No. 04-CV-0221-MJR, 2006 WL 1004862, at *6 (S.D. Ill. Apr. 17, 2006) (construing policy with the same "injury" definition and concluding that "[a]lthough [Plaintiff's] allegation that [Defendant] caused her to "sustain serious personal and emotional injuries . . . in both mind and body . . ." arguably is vague on this point, the Complaint as a whole make it clear that [Plaintiff] is not alleging that she was physically injured by Johnson's sexual "touching.").

[152] *See Johnson*, 2006 WL 1004862, at *6 ("NCMIC's policy does not apply to emotional distress). The Complaint also includes one allegation that Dr. Schweigert administered cortisone injection into Ms. Marsh's shoulder on two occasions. Docket 121-3 at 7. Consistent with the majority of the allegations in the Complaint, this allegation does not assert that Ms. Marsh suffered an "injury" under the Policy. Further, Dr. Pfeiffer testified that administering cortisone injections is outside the scope of professional services for a chiropractor and would require a prescription.

Dr. Schweigert's treatment of these Plaintiffs did not fall within the Policy's definition of "professional services." Dr. Pfeiffer opined that "[t]here are no chiropractic procedures that necessitate exposing and palpating the breasts and nipples."[153] Dr. Pfeiffer noted that Dr. Schweigert's purported treatments involving Plaintiffs' breasts constituted "sexual contact" under Alaska's Board of Chiropractic Examiners regulations.[154] Dr. Pfeiffer also stated that Dr. Schweigert's touching of Plaintiffs' buttocks and genital area were "outside the scope of generally accepted methods of examination or treatment" and concluded that Dr. Schweigert's conduct was beyond the scope of chiropractic care in Alaska.[155] In his deposition testimony, Dr. Schweigert agreed that there is no chiropractic reason to touch a patient's nipples.[156] Dr. Schweigert also testified that the allegation that he touched Dr. Blake's anus during treatment was "absolutely insane" and that there was no therapeutic reason to touch a patient's anus while performing a chiropractic treatment.[157]

Finally, Dr. Blake, Ms. Osterbauer, Ms. Marsh, and Ms. Ryan's allegations clearly fall within the purview of Policy Exclusion F and the SLD Endorsement. The allegations asserted by these four Plaintiffs describe, almost exclusively, "[s]exual impropriety, sexual intimacy, sexual assault, sexual harassment of any other similarly defined act."[158] The SLD Endorsement provides coverage where there otherwise would

---

Docket 120-18 at 76:3–17. Policy Exclusion M precludes coverage for claims arising out of the prescribing of a substance that requires a prescription. Docket 120-2 at 9.

[153] Docket 120-17 at 6.
[154] *Id.* at 7.
[155] *Id.* at 8.
[156] Docket 120-19 at 125:23–25, 126:1.
[157] *Id.* at 61:8–9; 65:11–14.
[158] Docket 120-2 at 9.

*Blake et al v. NCMIC Insurance Company*                                        Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                          Page 30

Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 30 of 36

be none for defense costs incurred "where the insured is alleged to have committed acts of sexual misconduct in the court of providing **professional services** to a patient."[159] Plaintiffs' interpretation of the Policy—that claims alleging sexual impropriety are covered under the Policy and that the label of "professional malpractice" controls over the substance of the allegations—has the effect of rendering the SLD Endorsement meaningless.[160] Although Dr. Schweigert denies that his actions were sexual in nature,[161] his deposition testimony supports the conclusion that an insured would reasonably expect Policy Exclusion F to encompass the allegations in the Underlying Action. Dr. Schweigert testified that his understanding of Policy Exclusion F is that NCMIC "would not pay, in this case on any sexual impropriety, sexual intimacy, sexual assault, sexual harassment, or anything else along that line."[162] When asked whether he understood Plaintiffs' allegations as falling within the scope of Policy Exclusion F, Dr. Schweigert replied "[y]es."[163] Summary judgment is therefore GRANTED in favor of NCMIC regarding the claims asserted by Dr. Blake, Ms. Osterbauer, Ms. Marsh, and Ms. Ryan in the Underlying

---

[159] *Id.* at 15.

[160] *State Farm Fire & Cas. Co. v. Millman*, 413 F. Supp. 3d 940, 952 (D. Alaska 2019) ("[C]ourts will 'if possible give effect to all parts of the instrument and an interpretation which gives a reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless or inexplicable.'") (quoting *Modern Construction, Inc. v. Barce, Inc.*, 556 P.2d 528, 530 (Alaska 1976)).

[161] Plaintiffs suggest that Dr. Schweigert's denial of liability for the acts alleged in the Underlying Action is determinative of coverage. Docket 123 at 17–18. However, proof of liability does not trigger the duty to indemnify after a settlement, "[w]hile courts may require the parties to establish facts that prove the underlying action was within the policy's coverage, no court requires the insured to establish its own liability." *Fireman's Fund Ins. Co. v. Sec. Nat. Ins. Co.*, 44 F. App'x 161, 163 (9th Cir. 2002).

[162] Docket 120-19 at 164:2–25.

[163] *Id.*

*Blake et al v. NCMIC Insurance Company*                                    Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                      Page 31

Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 31 of 36

Action—NCMIC is not liable for any portion of the Settlement arising out of these Plaintiffs' claims.

A genuine issue of material fact exists as to whether the ETPS Allegations asserted by Ms. Taranto, Ms. Williams and Ms. Asman are covered under the Policy. Unlike every other allegation in the Complaint, the ETPS Allegations allege injuries under the Policy in the form of pain or bruising.[164] Further, it is undisputed that ETPS is within the scope of professional services for chiropractors in Alaska.[165] However, a dispute exists as to whether the ETPS Allegations fall within the scope of Policy Exclusion F; specifically, whether the ETPS Allegations "arise out of" the "[s]exual impropriety, sexual intimacy, sexual assault, sexual harassment or any other similarly defined act."[166] Dr. Pfeiffer opined that "even the allegations of pain and bruising resulting from [ETPS] occurred during treatments involving . . . exposure and touching [of the breast area] that [was] not medically necessary."[167]  NCMIC's insurance expert, Ty Sagalow, acknowledged that the ETPS Allegations alleged bodily injury without reference to sexual assault or touching, but concluded they "took place during and as part of the same type of sexual assault or other acts of sexual impropriety" that are referenced throughout the Complaint.[168] NCMIC therefore asserts that "all of Plaintiffs' alleged injuries [arose] out of Dr. Schweigert's alleged sexual misconduct, including those which resulted from the

---

[164] Docket 119 at 46 (acknowledging that Plaintiffs Asman, Taranto, and Williams suffered physical injuries under the Policy).
[165] Docket 123 at 36; Docket 121-5 at 138:6-10.
[166] Docket 120-2 at 9.
[167] Docket 120-17 at 6.
[168] Docket 120-38 at 13 n.22.

*Blake et al v. NCMIC Insurance Company*                                                    Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                               Page 32
Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 32 of 36

ETPS treatments."[169]  NCMIC supports this conclusion by pointing out that Ms. Taranto and Ms. Asman testified that the ETPS treatments were to their breasts and their breasts were exposed during treatment.[170]  Dr. Schweigert testified that Ms. Williams, not Dr. Schweigert, exposed her breasts during treatment and that he performed ETPS on Ms. Williams to address tender points on her ribs.[171]  Dr. Schweigert also testified that he administered ETPS to Ms. Asman to address chest pain due to asthma and IBS.[172]  Dr. Schweigert did not have a memory of administering ETPS to Ms. Taranto.[173]  Given the conflicting testimony, the Court cannot conclude, as a matter of law, that the ETPS Allegations arose out of Dr. Schweigert's alleged sexual misconduct.  Summary judgment is therefore DENIED as to Ms. Taranto, Ms. Williams and Ms. Asman—a triable issue of fact remains as to whether the ETPS Allegations asserted by these Plaintiffs fall within the Policy's coverage.  Because the pain and bruising alleged by Ms. Asman, Ms. Taranto, and Ms. Williams are the only "injuries" under the Policy alleged in the Complaint, if a jury concludes that the ETPS Allegations are not excluded from coverage under Policy Exclusion F, these Plaintiffs can recover for the value of those injuries, but not any of their other allegations that alleged pure emotional distress.[174]

---

[169] Docket 125 at 19.  *See also* Docket 119 at 13 n.6 (referring to ETPS Allegations as "part and parcel of the sexually inappropriate conduct in which Dr. Schweigert is alleged to have engaged").

[170] Docket 127 at 15.

[171] Docket 120-19 at 91–93.

[172] *Id.* at 106–112.

[173] *Id.* at 86–88.

[174] *Grace v. Ins. Co. of N. Am.*, 944 P.2d 460, 464 n.7 (Alaska 1997) ("We have held that where an insurer breaches its contract, it is liable for that amount of a reasonable settlement reached by the insured which falls within the coverage provided by the policy.").

*Blake et al v. NCMIC Insurance Company*                                      Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                          Page 33

Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 33 of 36

### 4.    Is the Settlement reasonable?

The Alaska Supreme Court has recognized that "[c]ovenant settlement agreements can be abused.  The insured who is fortunate enough to be able to make such an agreement has no incentive not to agree to very high damage awards."[175]  Therefore, "[c]ovenant settlement agreements can only be binding on an insurance company that does not consent to them if they are found reasonable."[176]  The factors that go into the reasonableness inquiry include:

> [t]he releasing person's damages; the merits of the releasing person's liability theory; the merits of the released person's defense theory; the released person's relative faults [sic]; the risks and expenses of continued litigation; the released person's ability to pay; any evidence of bad faith, collusion or fraud; the extent of the releasing person's investigation and preparation of the case; and the interest of the parties not being released.[177]

NCMIC argues that the Settlement is unreasonable as a matter of law because "[t]he only physical injuries alleged by . . . Plaintiffs, Asman, Taranto, and Williams, were *de minimis*, temporary pain and bruising from ETPS treatments" and Plaintiffs' insurance expert agreed that "$250,000 is way beyond what one might expect if the simple allegation is the ETPS caused bruising."[178]  Plaintiffs argue that NCMIC's coverage arguments are irrelevant to the question of whether the Settlement was reasonable, which is a question for the jury.[179] The Court agrees that the reasonableness of the Settlement is a distinct inquiry from the question of whether the ETPS Allegations are covered by the Settlement.  The Court also

---

[175]  *Great Divide Ins. Co. v. Carpenter ex rel. Reed*, 79 P.3d 599, 609 (Alaska 2003).
[176]  *Id.* at 613.
[177]  *Id.* (quoting *Washington Ins. Guar. Ass'n v. Ramsey*, 922 P.2d 237, 248 (Alaska 1996)).
[178]  Docket 125 at 33 (quoting Docket 120-42 at 153:24–154:6).
[179]  Docket 123 at 42.

*Blake et al v. NCMIC Insurance Company*                                        Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                    Page 34

Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 34 of 36

agrees that reasonableness is typically a question for the jury.[180]  Although damages in the amount of $250,000 for Ms. Asman, Ms. Taranto, and Ms. Williams strikes the Court as disproportionate to the temporary pain and bruising caused by the ETPS treatment, given the dearth of evidence regarding the Settlement process and negotiations, the Court cannot conclude as a matter of law that the Settlement is unreasonable.  Summary judgment is therefore DENIED as to the reasonableness of the Settlement.

In sum, the ETPS Allegations are the only allegations that potentially fall within the scope of coverage under the Policy.  If a jury concludes that the ETPS Allegations fall outside the scope of Policy Exclusion F, it then must consider whether the Settlement was reasonable.  If the jury concludes that the ETPS Allegations are covered by the Policy, but that the Settlement was fraudulent or unreasonable, no portion of the Settlement may be enforced against NCMIC.  The jury will be instructed that, if the ETPS Allegations are covered by the Policy, Ms. Asman, Ms. Taranto, and Ms. Williams may only recover for the portion of the Settlement that corresponds to their pain or bruising.

## V.    CONCLUSION

Summary judgment is GRANTED IN PART AND DENIED IN PART consistent with this Order.  The remaining issues for a jury are:  (1) whether the ETPS Allegations are covered by the Policy, and, if the jury answers in the affirmative; (2) was the Settlement reasonable.

---

[180]  *Great Divide*, 79 P.3d at 614 (noting that reasonableness factors should be considered by the jury).

*Blake et al v. NCMIC Insurance Company*                                    Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                    Page 35

Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 35 of 36

Within twenty-one (21) days of this Order the parties are directed to file a Joint Status Report indicating whether they request a judicial settlement conference in advance of setting a trial date. If the parties indicate that they do not wish to pursue a judicial settlement conference, the Court will issue its Trial Readiness Certification Order.

IT IS SO ORDERED this 26th day of May, 2023, at Anchorage, Alaska.

*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
United States District Judge

*Blake et al v. NCMIC Insurance Company*                                    Case No. 3:17-cv-00193-JMK
Order Re: Cross-Motions for Summary Judgment and Motions to Strike                        Page 36

Case 3:17-cv-00193-JMK   Document 140   Filed 05/26/23   Page 36 of 36